**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**MITSUBISHI MOTOR MANUFACTURING OF AMERICA, INC., f/k/a "Diamond–Star Motors Corporation," Defendant.**

No. 96–1192.

United States District Court, C.D. Illinois, Peoria Division.

Jan. 20, 1998.

Jean P. Kamp, John C. Hendrickson, Steven J. Levine, Michelle A. Caiola, E.E.O.C. Chicago, IL, for E.E.O.C.

Peter W. Brandt, Livingston Barger Brandt & Schroeder, Bloomington, IL, Walter B. Connolly, Jr., Miller Canfield Paddock & Stone, Detroit, MI, Alison B. Marshall, Peter W. Waldmeir, Miller Canfield Paddock & Stone PLC, Washington, DC, for Mitsubishi Motor Mfg. of America, Inc.

Jeffrey B. Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, Julie L. Galassi, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Peoria Journal Star.

## ORDER

McDADE, District Judge.

This is a civil pattern or practice action filed pursuant to §§ 706 and 707 of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.*, by the Equal Employment Opportunity Commission ("EEOC") against Mitsubishi Motor Manufacturing of America, Inc. ("Mitsubishi"), alleging that Mitsubishi is liable for hostile work environment sexual harassment, *quid pro quo* sexual harassment, gender discrimination, retaliation, and constructive discharge at its auto assembly plant located in Normal, Illinois. The Complaint requests the following relief: a permanent injunction enjoining Mitsubishi from continuing its prohibited activities; a mandatory injunction requiring Mitsubishi to adhere to certain equal employment policies; and compensatory damages for the victims including backpay, reinstatement, past and future pecuniary and nonpecuniary losses; punitive damages; prejudgment interest; and costs.

There are two motions currently before the Court: Mitsubishi's Motion for Partial Summary Judgment (Doc. # 78–1); and the EEOC's Motion for Leave to File an Amended Complaint (Doc. # 93–1). The Court's discussion of these motions proceeds in two parts. Part I addresses the limited legal question [1] presented by Mitsubishi's

---

1. The legal question of whether a pattern or practice case can ever be brought for sexual harassment claims does not require consideration of facts or matters outside the pleadings. Thus, both litigants' use of additional pages in their briefs to argue already discovered facts, as well as the voluminous exhibits, attachments, documents, and photos filed under seal, are—to say the least—unnecessary to the resolution of this basic legal question. The parties' use of such materials and the arguments regarding them have resulted in the expense of valuable judicial resources, in particular, the time necessary to wade through these untimely documents. The parties are, therefore, reminded that:

motion for partial summary judgment.[2] Part II addresses the procedural questions presented by Mitsubishi's motion [3] and the EEOC's motion for leave to file an Amended Complaint, which seeks to cure the procedural deficiencies raised by Mitsubishi's motion.

## DISCUSSION

### I. The Legal Question

■ The principal legal question presented by Mitsubishi, whether a pattern or practice action can be brought for sexual harassment claims, requires the Court to grapple with the essential principles that animate Title VII. This has not been an easy task, but it is one which the Court recognizes as a privilege. To the Court's knowledge, this is the first time that this legal question has ever been raised. After careful consideration of the parties' arguments and the relevant case law, this Court finds that a pattern or practice action for sexual harassment is authorized by Title VII and can be brought by the EEOC, both as a legal matter and in this case.

■ The EEOC seeks to hold Mitsubishi liable for a pattern or practice of hostile environment and *quid pro quo* sexual harassment. The pattern or practice theory is that Mitsubishi created and maintained a sexually hostile and abusive work environment at its Normal, Illinois, auto assembly facility because it tolerated, from the facility's inception, individual acts of sexual harassment by its employees by refusing to take notice of, investigate, and/or discipline the workers who sexually harassed other employees. As a consequence, the EEOC argues that Mitsu-

bishi's "standard operating procedure—its regular rather than unusual practice"—was to ignore most (if not all) of its female employees' complaints that they were individually, or as a group, being subjected to a sexually hostile and abusive environment, in violation of Title VII, based upon: unwelcome sexual advances, demands for sexual favors, and other offensive verbal and physical conduct of a sexual nature.

If such a "standard operating procedure" of unlawful tolerance within the company's confines exists, it constitutes a "pattern and practice" of sexual harassment. Pattern or practice liability, rather than liability for individual conduct, is the primary focus of the EEOC's case. The EEOC argues, however, that the evidence which establishes a pattern or practice of sexual harassment by the company goes at least half the distance toward establishing the individual cases of sexual harassment brought by the class members, because it establishes the objective portion of their case. According to the EEOC, the pattern or practice case for injunctive relief, therefore, can and should be tried together with the individual claims for relief that stem from this pattern or practice.

■ Mitsubishi disagrees. In fact, Mitsubishi argues that proving a pattern or practice of sexual harassment simply cannot be done, because the gravamen of a sexual harassment claim, as it has been defined by the United States Supreme Court in *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) and *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), is that the allegedly offensive conduct was subjectively unwelcome.[4] At first glance, this argument

---

"Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991). This litigation strategy has not been appreciated by the Court, and future requests to file briefs in excess of 15 pages will be looked upon unfavorably as a result.

2. The legal question raised by Mitsubishi is really a jurisdictional question for a motion to dismiss under Fed.R.Civ.P. ("Rule") 12(b)(6), not one for summary judgment. Accordingly, this Court will treat the jurisdictional question, which does not require review of anything other than the allegations of EEOC's Complaint, as arising under Rule 12(b)(6).

3. The procedural questions raised by Mitsubishi do require review of matters outside the plead-

ings and therefore must be considered under Rule 56.

4. The Court allowed Mitsubishi to file a 74–page "theory of the case," together with its 54–page memorandum in support of its motion and its 55–page reply. Each argument raised in these voluminous documents need not be outlined in this opinion because the sum of these arguments essentially boils down to the single question of whether the "individual issues" necessary to resolve an individual claim of sexual harassment precludes the establishment of pattern or practice liability. We believe that the analysis set forth in this opinion fully resolves all issues raised by Mitsubishi in its papers, with one exception.

may appear to have some merit; but, in reality, the argument constitutes the proverbial "straw man." Although it is true that *Meritor* and *Harris* require individuals, in an individual case of sexual harassment, to prove that the conduct they experienced was subjectively unwelcome, this is not an individual case; it is a pattern or practice case, and the rules of engagement in this context are different. The *Meritor* and *Harris* cases involved individual charges of sex discrimination alleging individual acts of sexual harassment. They were not and did not purport to be pattern or practice cases, and the holdings regarding the proofs necessary to establish an individual case of sexual harassment must, accordingly, be modified.

▆▆▆ To scrap the entire pattern or practice case, as Mitsubishi would have us do, would ignore the statutory base for bringing Title VII actions for sex discrimination. Sexual harassment is a form of sex discrimination. Therefore, Title VII authorizes a pattern or practice suit for sexual harassment. This Court has concluded that a pattern or practice case for sexual harassment can be brought and maintained by the EEOC on behalf of the public for injunctive relief under §§ 706 and 707 of Title VII, based solely on an objective showing of the employer's un-

lawful pattern or practice. A pattern or practice case seeks to eradicate systemic, company-wide discrimination and focuses on an objectively verifiable policy or practice of discrimination by a private employer against its employees. To establish an unlawful pattern or practice, there is no need for the individual, subjective showings required by *Meritor* and *Harris* and, thus, no need for an employer's individual defenses. Once pattern or practice liability is established, individual relief is possible for the victims of an unlawful pattern or practice if these individuals can satisfy the subjective showings required by *Meritor* and *Harris*. As part of the individual relief phase, this Court believes that the victims of an unlawful pattern or practice are entitled to a presumption in their favor. The rationale for these conclusions and the methods of proof for such a case follow. Our analysis is broken down, as the case will be, into the "pattern or practice" phase and the "individual relief" phase.

### A. The Pattern or Practice Case— Phase I

This Court does not need to make a great leap of faith to state the obvious: Title VII authorizes a pattern or practice action for sexual harassment. The statutory authority

In a footnote, Mitsubishi claims that a pattern or practice case for retaliation and constructive discharge cannot be brought by the EEOC because these claims require individual analysis. In support of this argument, Mitsubishi relies on *Strong v. Arkansas Blue Cross & Blue Shield, Inc.*, 87 F.R.D. 496, 511 (E.D.Ark.1980), which held that retaliation claims are not class issues. We find *Strong* not only distinguishable but also uncontrolling. The *Strong* case does not apply here because this is a pattern or practice action, not a class action. In a pattern or practice case, the challenge is made to an employer's policy regarding an allegedly unlawful employment practice; Federal Rule of Civil Procedure 23's concerns, such as the adequacy of the class representative and/or whether individual issues and defenses predominate, are simply not considered in a pattern or practice action. *See E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.*, 102. F.3d 869, 870 (7th Cir.1996). Mitsubishi's argument is also meritless because neither retaliation nor constructive discharge claims require proof of a subjective element, as do claims of individual sexual harassment. *See Carr v. Allison Gas Turbine Div., GMC*, 32 F.3d 1007, 1011–12 (7th Cir.1994) (constructive discharge claim requires plaintiff to show "that the discrimina-

tion to which she was subjected was sufficiently serious to cause a reasonable person to quit."); *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir.1994) (*prima facie* case of retaliation established by showing that claimant engaged in protected activity under Title VII; suffered an adverse employment action; and that causal connection exists between adverse employment action and claimant's participation in protected activity). Accordingly, because a purely objective standard applies in cases of retaliation and constructive discharge due to sexual harassment, this Court finds that the traditional *Teamsters* pattern or practice burden-shifting framework applies to such claims to shift a burden of proof to the employer once the EEOC has established, in Phase I, an objectively verifiable pattern or practice of retaliation and/or constructive discharge. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 357–60, 361–62, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Concomitantly, individuals will be entitled to a presumption of liability, in Phase II, based on this pattern or practice finding, just as the individuals in *Teamsters* were entitled to such a presumption without any further showings. *Id.*

for the EEOC to bring a civil action on behalf of alleged victims of discrimination is found at § 706(f)(1) of Title VII. 42 U.S.C. § 2000e–5(f)(1). The EEOC also has the power to bring a pattern or practice suit under § 707(e) of that Title, subject to the administrative prerequisites of § 706, for systemic discrimination by private employers against their employees. *Id.* § 2000e–6. Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." *Id.* at § 2000e–2(a)(1). It is now well-established that "sex discrimination" includes claims for sexual harassment, both for *quid pro quo* harassment and for hostile environment harassment. *Meritor,* 477 U.S. at 64–66. Title VII, therefore, expressly authorizes the EEOC to bring a pattern or practice action for claims of sexual harassment.

The question in this case, then, is not whether a pattern or practice action for sexual harassment can be brought at all, but rather how such a pattern or practice case can be tried and proven, given the unique element of subjectivity found in a sexual harassment claim. Questions of proof are the questions that this Court has spent a considerable amount of time trying to satisfactorily resolve. These questions are not easy ones. The pattern or practice model established in *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), which works for every other form of prohibited discrimination under Title VII, breaks down for sexual harassment claims, as Mitsubishi suggests, because the two seminal cases defining the essence of a claim of sexual harassment—*Meritor* and *Harris*—require consideration of individual issues and defenses particular to an individual claimant.

In *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the United States Supreme Court first recognized that a "hostile or abusive work environment" may constitute sex discrimination under Title VII. *Id.* 477 U.S. at 66. In *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Court found that a discriminatorily hostile or abusive environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' which is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Id.* 510 U.S. at 21 *(quoting Meritor,* 477 U.S. at 67).

▮ Determination of whether harassing conduct creates a hostile environment "sufficiently severe or pervasive [enough] to alter the conditions of the victim's employment" requires the trier of fact to view the conduct in light of the record as a whole and the totality of the circumstances. *Meritor,* 477 U.S. at 69 *(citing* 29 C.F.R. § 1604.11(b)). In reviewing the record, the trier of fact must answer two main questions: (1) was the complainant, "because of her sex, subjected to such hostile, intimidating, or degrading behavior, verbal or nonverbal, as to affect adversely the conditions under which she worked[,]" and, if so, (2) was "the defendant's response or lack thereof to its employees' behavior ... negligent." *Carr v. Allison Gas Turbine Div., General Motors Corp.,* 32 F.3d 1007, 1009 (7th Cir.1994).

▮ The first question requires the trier of fact to determine the severity or pervasiveness of the particular conduct at issue by testing it against both an objective and a subjective component. In other words, the trier of fact must find both that an objectively reasonable person would find the environment hostile and that the victim, herself, subjectively perceived the environment as hostile. *Harris,* 510 U.S. at 21–22. The objective showing operates as a limitation on the subjective assertions of the claimant by requiring that the claimant's individual perceptions fall within a range that the reasonable person can understand. However, the gravamen of any sexual harassment claim is that the claimant, herself, personally found the alleged sexual advances "unwelcome." *Meritor,* 477 U.S. at 68. If "the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is not a Title VII violation." *Harris,* 510 U.S. at 21–22. However, there

is no requirement of tangible economic consequences or psychological injury. *Id.* In order to establish a subjective perception of abuse, the charging party must only testify that she found the alleged conduct to be hostile or abusive at the time it occurred because she did not solicit or incite it, and she regarded the conduct as undesirable or offensive. *Henson v. City of Dundee,* 682 F.2d 897, 903 (11th Cir.1982). Unless the respondent produces evidence to the contrary, the subjective prong of the analysis will be satisfied. *Id.*

The second question, the employer's negligence, is equally fact-specific. In general, an employer can be held negligent if it knows or should have known about the harassing conduct. *Jansen v. Packaging Corp. of Am.,* and *Ellerth v. Burlington Indus.,* 123 F.3d 490, 494–495 (7th Cir.1997) ("*Jansen*") (*per curiam*) (stating that the "law of the circuit" in these cases is "negligence, not strict liability."). In fact, "[a] plaintiff has no duty under the law to complain about discriminatory harassment, but the employer . . . will not be liable if it had no reason to know about it. Nor does a plaintiff have a legal duty to cooperate with the employer's investigation; but the reasonableness of the employer's attempts to rectify harassment is measured against how much it knows or should have known." *Perry v. Chernin,* 126 F.3d 1010, 1015 (7th Cir.1997).

The negligence requirement incorporates the necessity of notice to the employer, since without notice there cannot be negligence. *Id.* at 1013 (imposing liability without notice would constitute strict liability to the employer, which was rejected in *Jansen*). *See also Zimmerman v. Cook County Sheriff's Dep't.,* 96 F.3d 1017, 1019 (7th Cir.1996) (If "the only possible source of notice to the employer . . . is the employee who is being harassed," she must present evidence "that she gave the employer enough information to make a reasonable employer think there was some probability that she was being sexually harassed."). An employer is said to be on notice when information about the harassment comes to the attention of someone who either has the power to do something about it or who has—or can reasonably be believed to have—"a duty to pass on the information to someone within the company" who does. *See*

*Young v. Bayer Corp.,* 123 F.3d 672, 674 (7th Cir.1997). However (and this is an important "however"), "[i]f the harassment is pervasive [as it certainly must be in a pattern or practice case] *it can be presumed,* subject . . . to rebuttal, to have come to the attention of someone authorized to do something about it." *Id.* (emphasis added). "In either case," says the Seventh Circuit, "the enterprise has a reasonable chance of being able to respond to the information, whether it is information that it is being sued or information that subordinate employees are committing criminal or tortious acts." *Id.*

These concerns are also present in *quid pro quo* cases of sexual harassment. *Quid pro quo* sexual harassment describes situations in which submission to sexual demands is made a condition of tangible employment benefits. *Henson v. City of Dundee,* 682 F.2d 897, 911 (11th Cir.1982); *Dockter v. Rudolf Wolff Futures, Inc.,* 913 F.2d 456, 461 (7th Cir.1990). "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual[.]" 29 C.F.R. § 1604.11(a) (1997). The proof required to establish *quid pro quo* sexual harassment is the same as that required for a hostile environment claim except that the employee, instead of showing that her work environment was pervaded by severe harassment, must show that "the employee's submission to the unwelcome advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment[.]" *Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 186 (6th Cir.1992). However, in the situation where the victim submitted to the request for sexual favors, she need not show any tangible economic harm to state a claim for *quid pro quo* harassment. *Karibian v. Columbia Univ.,* 14 F.3d 773, 778–79 (2d Cir.1994).

Thus, under either type of harassment, there is both an objective and a subjective component of the claim. To prevail, the plaintiff must establish: (1) that she personally was adversely affected by the conduct, and (2) that a reasonable person would also have been adversely affected. *Rennie v. Dalton*, 3 F.3d 1100, 1107 (7th Cir.1993). In addition, for the employer to be liable, the plaintiff must establish both that the employer had notice of the harassment and was negligent in taking corrective action. *See generally Jansen*, 123 F.3d at 493–94; *Perry*, 126 F.3d at 1013.

Although these two theories of liability involve different conduct,

> [v]ictims of *quid pro quo* harassment often suffer a hostile environment. Indeed, the *quid pro quo* concept, in its widest reach, could include any situation in which individuals must accept a gender-hostile environment in order to enjoy the tangible benefits of their jobs. Similarly, victims of hostile environments often suffer the tangible job detriments associated with *quid pro quo* harassment. A hostile environment may drive employees off the job, demoralize or upset them to the extent that they are fired for absenteeism or unsatisfactory work, or cause them to complain about the harassment and risk retaliatory discharge.

*See e.g.*, BARBARA LINDEMANN & DAVID D. KADUE, SEXUAL HARASSMENT IN EMPLOYMENT LAW 8–9 (1992). Consequently, the proof offered to establish a hostile environment case may also serve to establish a *quid pro quo* case of sexual harassment.

This Court believes that the overlap in proof is especially relevant in a pattern or practice case, such as this one, which alleges both theories. The overlap in proof is relevant, in part, because the *Meritor* and *Harris* decisions—which require consideration of subjective elements—do not purport to address the method of proof in pattern or practice cases, as opposed to individual cases. Consequently, a pattern or practice case alleging either theory will follow the same format.

In a pattern or practice case brought by the EEOC for injunctive relief, it is not really necessary or appropriate to consider the subjective issues of individuals. If a company engages in a pattern or practice which is proved by an objective test, and the company is negligent in preventing it, then the EEOC can and should be able to obtain injunctive relief, regardless of whether some of the individuals may have no subjective objection to the harassing conduct (*i.e.*, the conduct may be welcome to some). The *Meritor* and *Harris* decisions do not address these issues, and this Court believes that the teachings of *Meritor* and *Harris* are not intended to apply lockstep in a case such as this one. The law, therefore, must be that at the pattern or practice phase, subjective proofs are not necessary and should not be considered to find a pattern or practice of sexual harassment.

The framework for the pattern or practice case that this Court has conceived is divided into phases, like the *Teamsters* model. *See* 431 U.S. at 360–62. In an effort to organize the controlling principles of law, the Court has organized its discussion by providing both a method of proof and a rationale section for each phase. The Court's conclusions of law are set forth below.

### 1. Method of Proof

In Phase I, the pattern or practice phase, the EEOC will be permitted to establish a pattern or practice of sexual harassment by proving, by a preponderance of the evidence, that an objectively reasonable person would find the existence of: (1) a hostile environment of sexual harassment within the company (a hostile environment pattern or practice) or a situation where individuals within the workplace, as a whole, must accept a gender-hostile environment to enjoy the tangible benefits of their jobs (a *quid pro quo* pattern or practice); and (2) a company policy of tolerating (and therefore condoning and/or fostering) a workforce permeated with severe and pervasive sexual harassment. Determining whether a hostile environment exists (for purposes of establishing hostile environment or *quid pro quo* harassment), in a pattern or practice case, must be done by the trier of fact in light of the totality of the circumstances.

Under the totality of the circumstances analysis the district court should not carve the environment into a series of discrete incidents and then measure the harm occurring in each episode. Instead, the trier of fact must keep in mind that "each successive episode has its predecessors, that the impact of the separate incidents may accumulate, and that the work environment [thereby] [sic] created may exceed the sum of the individual episodes."

*See Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 885 (D.Minn.1993) (*quoting Burns v. McGregor Electronic Indus., Inc.*, 955 F.2d 559, 564 (8th Cir.1992) and *Robinson v. Jacksonville Shipyards, Inc.*, 760 F.Supp. 1486, 1524 (M.D.Fla.1991)). *See also Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir.1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents but on the overall scenario."). Accordingly, the landscape of the total work environment, rather than the subjective experiences of each individual claimant, is the focus for establishing a pattern or practice of unwelcome[5] sexual harassment which is severe and pervasive.[6] The existence of a company's policy of tolerating sexual harassment is the basis for pattern or practice liability. Tolerance of sexual harassment permits rampant discrimination to take place. If, based on the sum of the individual testimony by the class, the trier of fact determines that an objectively reasonable person would have to spend the work day running a "gauntlet of sexual abuse in return for the privilege of being allowed to work and make a living[,]" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986) (*quoting Henson v. Dundee*, 682 F.2d 897, 902 (11th Cir.1982)), then a finding that sexual harassment is occurring in the workplace is justified.

▮ The company's pattern or practice of tolerating such harassment, however, will require an additional showing of the company's notice and negligence.[7] When harassing behavior occurs frequently enough and is both common and continuous, a company can reasonably be said to be on "notice" of a severe and pervasive problem of sexual harassment that constitutes a hostile environment. *See Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir.1997) ("If the harassment is pervasive, it can be presumed, subject we imagine to rebuttal, to have come to the attention of someone authorized to do something about it."); *Jenson*, 824 F.Supp. at 886 (when sexual harassment is "pervasive," the pervasive nature of the problem "gives rise to an inference of knowledge or constructive knowledge."); *Robinson*, 760 F.Supp. at 1531 ("an employer incurs liability when harassing behavior happens frequently enough that the employer can take steps to halt it."). In addition, evidence that many of

---

5. This Court agrees with the district court in *Jenson* regarding its pattern or practice finding of unwelcomeness: "a finding of unwelcomeness will be justified where the plaintiff class shows by a preponderance of the evidence that women, by their conduct[,] indicated that the acts of sexual harassment were unsolicited and regarded as undesirable or offensive." 824 F.Supp. at 883. We do not agree with *Jenson*'s elimination of the presumption, however, as will be discussed *infra*.

6. It is the harasser's conduct, not the alteration of the conditions of employment, that must be "severe and pervasive." *Muench v. Township of Haddon*, 255 N.J.Super. 288, 289, 605 A.2d 242, 62 Fair Empl.Prac.Cas. (BNA) 476, 479 (N.J.Super.A.D.1992).

7. Notice and negligence, we believe, must be established at both the pattern or practice and individual relief phases. A company's notice of a pattern or practice and its notice of individual harassment, although related, involve slightly dif-

ferent inquiries. Similarly, a company's negligence in responding to a systemic problem of sexual harassment requires different findings than those required to hold a company negligent for failing to remedy an individual act of sexual harassment. The Court believes, however, that the establishment of a pattern or practice of unlawful sexual harassment by the company entitles individual claimants to a presumption that the company had notice and was negligent with respect to the individual victims of the pattern or practice. As the following discussion will illustrate, such a presumption makes sense in light of the fact that it is the company's burden to offer evidence that it did not have notice or was not negligent as to a particular individual. Having proven that a company is a "wrongdoer" at the pattern or practice phase, because it had notice and was negligent of the systemic problem, certainly justifies such a presumption and places the burden, at least of production, on the company to show that it was not on notice and was not negligent with respect to a particular claimant.

a company's first-line supervisors had actual knowledge of the harassing behaviors (some of them may have participated in the harassment and others may have simply worked closely with those who did), would be sufficient under *Young* to hold that the company had notice of sexual harassment within the plant, if these supervisors had a duty or reasonably could be believed to have such a duty, under the company's sexual harassment policy, to "pass on the information to someone within the company who has the power to do something about it." 123 F.3d at 674.

 The negligence analysis is the same. An employer can be said to be negligent for company-wide sexual harassment when it has a policy or practice of tolerating a work environment that it knows or should have known is permeated with sexual harassment, but does not take steps to address the problem on a company-wide basis. The assertion that it may have investigated individual cases of sexual harassment will not be a defense to pattern or practice liability. *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 887 (D.Minn.1993). A systemic remedy is necessary to correct a company-wide problem.[8] "Situation-specific" responses will not suffice. *Id.* Steps must be taken to determine whether individual incidents, which occur frequently and continuously, are "indicative of a larger problem requiring a company wide response." *Id.* (*citing Rauh v. Coyne*, 744 F.Supp. 1186, 1189 (D.D.C.1990)). In *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.

1981), the District of Columbia Circuit Court of Appeals found that when an employer knows of sexual harassment, it "should promptly take all necessary steps to investigate and correct any harassment, including warnings and appropriate discipline directed at the offending party, and should generally develop other means of preventing harassment within the [organization]." *Id.* at 947.[9] The *Bundy* approach works well in a pattern or practice case, because it recognizes the distinction between "situation-specific" remedies, which do not address the company-wide problem, and company-wide remedies which are directed at eradicating the discriminatory policy and the effects of that policy. In a pattern or practice case, an employer must take company-wide action to establish that it has not been negligent.

The "effectiveness" of the remedial action, however, is also relevant to the negligence analysis. In *Robinson v. Jacksonville Shipyards, Inc.*, the district court found that although the employer in that case "did respond to some aspects of the sexually hostile work environment, the effectiveness of its response must be evaluated." 760 F.Supp. at 1531. The *Robinson* court then outlined the two methods of measuring effectiveness that have received endorsement. *Id.*

> One, the employer's total response is evaluated on the basis of the circumstances as then existed. The employer's response is ineffective if "it delay[ed] unduly ... [and] the action it [did] take, however promptly,

8. The sexual harassment need not occur in the auto assembly plant, as a whole, to be actionable in a pattern or practice case; rather, if the alleged harassment is only occurring in one or two areas of the plant, then those areas will be the relevant populations examined for purposes of determining whether or not there was a severe and pervasive problem of sexual harassment within the plant. To do otherwise would effectively mean that Title VII did not apply to those unlucky enough to work in the areas in which the alleged harassment was occurring, simply because this harassment was not occurring every place else. Such a requirement is not consistent with Title VII, nor does it appear to be required by the United States Supreme Court. *See Teamsters*, 431 U.S. at 336 n. 16 (legislative history of pattern or practice actions reflects that the legislature intended pattern or practice liability to attach if a company practiced discrimination "through all or a significant part of its system, or

if a company repeatedly and regularly engaged in acts prohibited by the statute.").

9. We note, in passing, that Mitsubishi developed a company-wide response to sexual harassment, beyond its written policies, once this lawsuit was filed. For example, it hired the former Secretary of Labor, Lynn Martin, and developed what the parties refer to as the "Opportunity Programs Department," known as "OPD," an organization supposedly filled with experts on handling sexual harassment complaints. Whether "OPD" has been effective is not really the point right now. What is interesting to the Court, even though the factual issues are not now before us, is that a company-wide response was not initiated until this lawsuit for pattern or practice liability was filed. Such "evidence" seems to justify the use of the pattern or practice powers of the EEOC, all by itself.

[was] not reasonably likely to prevent the misconduct from recurring." Two, an employer can defend successfully by showing that the conduct brought to the company's attention was not repeated after the employer took action. In this regard, the employer must show that the effectiveness of the actions, not merely that actions were taken.

*Id.* (internal citations omitted).

 In short, to find that an employer was "negligent" in a pattern or practice case, the EEOC must show that the employer had notice, failed to take steps to remedy the company-wide problem of harassment that it knew or should have known about, and, if it took steps, failed to take effective steps. Such a showing should be sufficient to establish a "policy" of tolerance by the company toward sexual harassment that would justify a finding of pattern or practice liability, so long as the other objective showings necessary to establish the existence of severe and pervasive harassment on a wide-scale basis are in place.

### 2. Rationale

The Court's rationale for eliminating the subjective proofs necessary in an individual action at the pattern or practice phase is quite simple. Sexual harassment claims involve individual questions and defenses which cannot be tried, as to the class,[10] on common issues of liability. This is the problem and the solution.

A pattern or practice case can be established without the subjective showings required by *Meritor* and *Harris*. In fact, to require subjective showings would needlessly conflate the proofs necessary to establish a pattern or practice with those necessary to establish individual liability for sexual harassment. Such conflation would cause confusion and essentially undermine the goals of a pattern or practice case. *Meritor* and *Harris*, with their focus on an individual action of discrimination, did not address pattern or practice liability and, therefore, were not called upon to recognize that the purpose of a pattern or practice case is different than the goal of an individual action. This Court, therefore, concludes that *Meritor* and *Harris* do not apply lockstep to a pattern or practice case for sexual harassment.

 In a pattern or practice case, the EEOC acts both for the benefit of specific individuals who are subject to discrimination by the employer and "to vindicate the public interest in preventing employment discrimination." *General Tel. Co. of the Northwest, Inc. v. E.E.O.C.,* 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (footnote omitted). The goal of vindicating the public's interest in eradicating systemic discrimination by private employers is central to the purpose of a pattern or practice action. In such an action, the EEOC seeks to impose pattern or practice liability upon an employer who violates Title VII on a system-wide basis to enjoin the employer's discriminatory practices. Individual relief is permitted once pattern or practice liability is established, but, it is not the central or the initial focus of a pattern or practice case. Individual issues, therefore, are not even relevant until the individual relief stage—a stage which occurs only if pattern or practice liability has first been established.[11] Accordingly, pattern or practice cases are not like individual actions, even though individuals typically may be able to obtain relief based on a pattern or practice finding.

 Instead, pattern or practice cases target large scale, system-wide discriminatory practices and their effects, rather than "simply intentional wrongs." *See* Pub.L. No. 92–261, H.R.Rep. No. 92–238 (June 2, 1971).

---

**10.** This Court is aware of the Seventh Circuit's decision in this case, which indicated that this is not a class action subject to Rule 23. *See E.E.O.C. v. Mitsubishi Motor Mfg. of Am., Inc.,* 102 F.3d 869 (7th Cir.1996). Nonetheless, as the Seventh Circuit also indicated, the use of the term "class" for the group of individuals on whose behalf the EEOC is bringing this action is, for lack of a better term, an acceptable nomenclature for the group. *Id.* at 870.

**11.** This is because the individual testimony offered as anecdotal evidence of the pattern or practice in phase I is offered solely for the purpose of establishing the objectively verifiable pattern or practice; it is not offered for the purpose of establishing individual liability. The same story by an individual may be offered as evidence in both phases, but the purpose of the story will differ depending upon the type of liability to be established. A limiting instruction, therefore, would be necessary in Phase I of a jury trial.

The purpose and effect of a successful pattern or practice case is to impose liability upon a private employer, not simply for individual wrongs, but for discriminatory policies created and maintained by an employer that result in a system-wide pattern or practice of disparate treatment against individuals who fall within a protected class.

Consistent with the imposition of liability for a system-wide, rather than an individual, wrong is Title VII's provision of injunctive relief, rather than monetary damages. 42 U.S.C. § 2000e–5(g).[12] *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 361, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *See also Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 470 (8th Cir.1984); *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 888 (D.Minn.1993). When the EEOC establishes pattern and practice liability, the federal district court is authorized to enjoin the discriminatory practices of the employer. Injunctive relief achieves a public benefit, because it is intended to eradicate, insofar as possible, an ongoing practice of discrimination by a private employer against its employees and to "eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (citation omitted). Injunctive relief, however, does not remedy the damage already done to the individuals who have been the victims of this system-wide discrimination prior to the establishment of pattern or practice liability. Pattern or practice cases have, therefore, been designed in a way that permit individual victims of an employer's pattern or practice of discrimination to obtain individual relief based on a presumption of liability that flows from the pattern or practice finding against the employer. *See generally Teamsters*, 431 U.S. at 357–60, 361–62 ("The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy.").

## B. Individual Relief Phase—Phase II

### 1. Method of Proof

The *Teamsters* presumption of liability, however, does not work at the individual relief phase of a sexual harassment case. The problem is that the presumption of liability that typically flows from a pattern or practice action shifts the burden of *proof* (rather than production) to a company. Shifting a burden of proof does not work in a pattern or practice action for sexual harassment, because individual relief for sexual harassment, even if the harassment for which a plaintiff recovers is based on a pattern or practice of tolerance by an employer, still requires a plaintiff to prove that she was subjectively harmed by the harassing conduct under *Meritor* and *Harris*. Proof of subjective harm is not relevant to the pattern or practice case and cannot be admitted at Phase I. Therefore, to presume liability and shift the burden of proof to an employer in Phase II, without requiring an individual to make her subjective showings, would presume away an individual's burden of proof on elements essential to the establishment of individual liability for sexual harassment under *Meritor* and *Harris*. The United States Supreme Court has expressly cautioned the federal courts not to do this. Acknowledging that differing factual situations may require a more flexible framework for "establishing a *prima facie* case of discrimination[,]" the Court made clear that inferences cannot be created which relieve a plaintiff of her ultimate burden of proof.

> The importance of *McDonnell Douglas* lies, not in its specification of the discrete elements of proof there required, but in its recognition of the general principle that any Title VII plaintiff must carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.

*Teamsters*, 431 U.S. at 358 (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

---

**12.** The statute provides in relevant part:
> If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice.... 42 U.S.C. § 2000e–5(g).

█ A finding of pattern or practice liability for sexual harassment does not give rise to any obvious presumptions with regard to individual liability for sexual harassment, because there are subjective perceptions that must be taken into account in Phase II. All that the EEOC will have established in Phase I by a finding of pattern or practice is that an objectively reasonable person would find that, as a whole, the environment within the company is hostile and that the company was on notice of and was negligent regarding the systemic problem.

To simply eliminate the presumption that can and should flow from the pattern or practice case altogether, however, as did the district court in *Jenson v. Eveleth Taconite Co.*, 824 F.Supp. 847, 876 (D.Minn.1993),[13] would effectively disassociate the pattern or practice case from the individual cases so that there would be no benefit to the individual class members from a pattern or practice finding. We do not believe that eliminating any and all presumptions, as *Jenson* did, is the solution.[14]

"Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). This Court, unlike the district court in *Jenson*, believes that a rebuttable presumption can be applied at the individual relief phase, Phase II, to help individuals secure relief for their individual claims. In a pattern or practice case, the finding of objective discrimination in Phase I may be applied at Phase II to relieve an individual claimant of her *prima facie* burden to prove that

element. The subjective elements of an individual's sexual harassment claim, although not established by the pattern or practice case, are not difficult to make out in Phase II. The gravamen of an individual's sexual harassment claim is that the complained of conduct was unwelcome. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The proof needed to establish a subjective perception of abuse in the typical individual case for hostile environment and *quid pro quo* sexual harassment, however, is minimal, virtually a formality; the charging party must merely testify that she found the alleged conduct to be hostile or abusive at the time it occurred. Unless the respondent produces evidence to the contrary, the subjective prong of the analysis will be satisfied. The burden of coming forward with evidence to challenge the plaintiff's assertion that the alleged harassment was "unwelcome" has always been on the employer. Absent such evidence, the mere fact that a person is now complaining is enough to minimally satisfy the subjective prong of the sexual harassment claim. Shifting the burden of production to the employer on the subjective prong, in a pattern or practice case, therefore, does not appear to be anything new in sexual harassment law, since that burden has essentially always been borne by the employer.

Thus, having found a pattern and practice of sexual harassment in Phase I, the likelihood that any potential class member would be able to satisfy the threshold proof required to establish the subjective element of her claim, in Phase II, is highly probable. In

---

**13.** The Court is aware that the Eighth Circuit recently reviewed the findings of the district court in *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1997 WL 748204 (8th Cir. Dec.5, 1997). The parties did not challenge the district court's finding of § 706 classwide liability for a pattern or practice of sexual harassment on appeal. The Eighth Circuit, nonetheless, placed its imprimatur on the district court's conclusion that the burden shifting framework of *Franks v. Bowman*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), applies in a pattern or practice class case to shift a *burden of proof* to the employer, once an individual has established the subjective

elements of her case. *See Jenson*, 130 F.3d 1287, 1299. As our discussion indicates, this Court does not agree with that conclusion.

**14.** In *Jenson*, the district court held that a presumption of discrimination does not arise from an objectively hostile environment because the employee's subjective perception is an essential element of a claim of hostile environment sexual harassment. *See* 824 F.Supp. at 876 ("presumption that the employer discriminated against individual class members may not arise from a determination that the reasonable woman would have been affected by the acts of sexual harassment.").

fact, a presumption shifting the burden of production to the employer to offer some evidence showing that its conduct was welcomed by a particular female employee is consistent with the realistic expectation that it is the employer, not the female employee, who will be in the best position to produce such evidence. This rebuttable presumption also furthers the goal codified in Rule 1 of the Federal Rules of Civil Procedure to secure the just, speedy, and inexpensive determination of every action.

By ordering the proof to conform with the probabilities that an individual can easily offer proof of her subjective perception of discrimination, a presumption may be applied to shift the burden of production on this issue to the employer, still leaving the ultimate burden of proof on the subjective elements to the individual plaintiffs. This approach, unlike the approach taken in *Jenson*, is more consistent with the essential nature of a pattern or practice case. The existence of a presumption is essential in a pattern or practice case, because "[a] finding of a discriminatory pattern or practice creates 'a greater likelihood that any single decision was a component of the overall pattern,' and changes 'the position of the employer to that of a prove[n] wrongdoer.'" *See e.g., Craik v. Minnesota State Univ.*, 731 F.2d 465, 471 n. 9 (8th Cir.1984) (*citing Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359–60 n. 45, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). To eliminate the presumption, as *Jenson* did, ignores the likelihood that the individual decisions a company makes about individuals, consistent with its company-wide pattern or practice, are discriminatory. Rather than eliminating the presumption, this Court chooses to extend a rebuttable presumption of individual liability to all women in the workplace. It then becomes the goal of Phase II to determine which of the women are actually part of the "affected class." *Teamsters*, 431 U.S. at 331 n. 6.

The concept of an "affected class" is not new. In *Teamsters*, the parties and the Court acknowledged some limitation on the members of the class who could benefit from the presumption(s) which flowed from a finding of pattern or practice liability. *Id.; Jenson*, 824 F.Supp. at 885 (the plaintiff must establish that she was an " 'affected individual,' that is, that she, personally, was as affected by the conduct as the reasonable woman."). Limiting the presumption of liability to the "affected class" acknowledges that not all individuals in the class are necessarily entitled to the presumption, while preserving the presumption's benefit for those who are entitled to it.

How then does one determine which members of the potential class have been subjectively "affected" by the objectively hostile environment for liability to be established? This Court's solution is to change the *Teamsters* model slightly to make the employer's burden one of production rather than proof. A burden of production requires an employer to come forward with evidence to show that the individual members of the potential class, either in whole or in part, did not subjectively perceive the environment as hostile. In this way, it is the employer who essentially determines, based upon its individual defenses, who belongs in the affected class and who does not.

Until an employer's individual defenses are proffered, however, one can "presume" from an objective pattern or practice finding that the working environment, as a whole, is hostile, and that *most women*[15] would also find such an environment subjectively hostile. One may also presume from a pattern or practice finding of sexual harassment that an employer is on notice that individuals within its workforce are experiencing sexual harassment. The employer may not know precisely who the affected individuals are, but the knowledge that a hostile environment exists, which gives rise to a duty to remediate the company-wide problem, certainly also gives rise to a similar

---

**15.** Nonetheless, even if a particular charging party has not been subjectively offended by the conduct in question, if a reasonable person would find the conduct offensive, the EEOC, itself, may pursue individual relief for any other persons identified in the course of the investiga- tion who subjectively found the environment to be hostile and who were, therefore, affected by the hostile conditions existing in the workplace, as a whole. *See generally General Tel. Co. of the Northwest, Inc. v. E.E.O.C.*, 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980).

duty to seek out and investigate individual cases of sexual harassment that the employer knows or should know about, so that the remediation occurs both at the systemic and the individual level.

■ This Court sees no inherent unfairness in presuming from a pattern or practice finding that the employer has notice that individual members of its workforce are subject to sexual harassment within its enterprise. Knowing exactly who these individuals are is a function of the reporting systems set up within the organization and, therefore, relates to the negligence analysis. If a supervisor knows or has reason to know that a particular individual is being harassed, the assertion that this individual did not formally complain is no defense. The Seventh Circuit recently made clear that a plaintiff has no duty to complain about discriminatory harassment. *See Perry v. Chernin*, 126 F.3d 1010, 1015 (7th Cir.1997). Failure to complain can be relevant, but only if the harassment cannot be discerned in any other way. *Id.* If the harasser is the very person within the company charged with a duty to report and/or investigate harassment, then the victim's "failure" to complain will not be a defense for the employer on the basis that it did not have "notice." [16] *Id.* This is especially true in a pattern or practice case where the employer has been found to be a proven wrongdoer with notice of company-wide harassment by individuals in its workforce. If the employer is found liable for a pattern or practice of tolerating sexual harassment within its company, it stands to reason that the employer also tolerates individual sexual harassment, and a presumption to this effect is in order.

■ The issues of notice and negligence, however, require some thought. Although "[a] plaintiff has no duty under the law to complain about discriminatory harassment, .. the employer ... will not be liable if it had no reason to know about it. Nor does a plaintiff have a legal duty to cooperate with the employer's investigation; but the reasonableness of the employer's attempts to rectify harassment is measured against how much it knows or should have known." *Id.* at 1015. A pattern or practice finding that an employer had notice (*i.e.*, knowledge) and was negligent in responding to the pervasive hostile environment probably means—but does not necessarily mean—that this same employer was negligent with regard to the individuals working there. In fact, it is quite possible that, although the employer failed to take remedial action with regard to the systemic problem, it did take an unusual course with respect to certain individuals by intervening in legally appropriate ways to correct individual problems of harassment. Thus, an individual would still need to bear her ultimate burden of proof on the issues of notice and negligence.

There is, however, no need to duplicate proofs with respect to the objective findings of notice and negligence established in Phase I. All that is required in Phase II is for the individual claimant to assert that the employer had notice and was negligent with regard to the harassment she suffered. It will then be necessary, as it is in an individual case, for the employer to come forward with some evidence rebutting these assertions. If the employer fails to produce such evidence, then the presumption of notice and negligence which flows from the pattern or practice

---

**16.** An important aspect of this case; factually, is going to be whether women who allege that they were victims of harassment "failed to report" the objectionable conduct. There are several possible reasons for a failure to report. The harasser could be a supervisor charged with the duty to report the harassment; and the woman fears retaliation if she sidesteps him and goes to the personnel department. Or, a woman may "fail" to report the harassment because, over a period of time, she has observed that reports of harassment, either to supervisors or the personnel department, results in no action or inadequate relief. For instance, there is some evidence in the record suggesting that the only penalties for harassing behavior doled out by the company were the presentation of videotapes to the harasser. These videotapes apparently became a joke among those in the plant who allegedly perpetuated the harassment. The harassment, itself, however, was not a joke, and, in some cases, appears to have intensified after these videotapes were viewed. The company's tolerance or perceived tolerance of such harassment allegedly sent a message to women in the plant over a period of time. This message, in effect, was that a woman was expected to put up with harassment as a condition of her job, and if she didn't like it, she should quit. Title VII requires more of a company, and it provides protection against such conduct by individuals and employers.

finding, together with the individual's subjective assertion of such facts, is enough to establish a basis for individual liability. If the employer does, however, proffer such evidence, it will be up to the individual plaintiff to satisfy her burden of proof on these elements.

## 2. *Rationale*

These conclusions are supported, we believe, by the following rationale. Although "isolated" or "sporadic" instances of harassment experienced by a person in an individual action are typically not enough to establish hostile environment sexual harassment, single instances of conduct must be taken together with the continuous pattern of harassment in the workplace, as a whole, which was established at the pattern or practice phase. It is this total environment which establishes the context for a particular plaintiff's experience of harassment. When the work environment is permeated with sexual harassment, an individual's exposure to this environment may be severe enough to impose individual liability. In fact, a finding of pattern or practice liability takes into account the necessity of showing "more than the mere occurrence of isolated or accidental or sporadic discriminatory acts[,]" because it requires a pattern of consistent behavior. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

To disregard the pattern or practice findings at the individual relief phase would be unrealistic. An individual's personal experience of sexual harassment is part of the larger context in which she works. Although she may be the target of only one or two incidences of harassment by an individual, these incidences are part of a pattern of conduct by the employer that is actionable. The individual claimant is, therefore, not only a victim of the individual acts of discrimination perpetrated by the harasser within the plant, but she is also the victim of a systemic policy of tolerance by the company. It is this systemic policy, together with the individual acts of harassment, for which the employer is liable in Phase II, because it is the policy which makes the perpetration of the individual conduct possible. The two types of conduct, the employer's tolerance and the harasser's behavior, cannot be artificially separated. It is the employer's tolerance of the individual acts of sexual harassment that make the continuation of such harassment against individuals possible. Proof of such conduct, therefore, must work together to establish the total environment. The net effects of this environment may yield a pattern or practice finding, and the individual conduct within the environment may yield individual liability. The pattern or practice finding, however, makes it easier to believe that a company's decisions regarding individual incidents of harassment were discriminatory. *See Teamsters*, 431 U.S. at 359 n. 45, 362 (proof of pattern or practice supports inference that any particular employment decision made while discriminatory policy in force was made in pursuit of that policy).

The Court believes that the framework we have set forth for proving a pattern or practice case through which individuals can obtain individual relief remains true to the mandates of Title VII and the case law defining the contours of actionable sexual harassment. To summarize, this Court's solution is to keep the basic *Teamsters* framework, but to do two things: (1) eliminate the application of the subjective showings required by *Meritor* and *Harris* in Phase I because a pattern or practice case focuses on the employer's objective policy or practice, not individual charges of discrimination and therefore does not contemplate the need for subjective or individual proofs or defenses; and (2) change the presumption in *Teamsters* from an absolute presumption of liability that shifts the burden of proof to the respondent to a rebuttable presumption of liability that merely shifts the burden of producing some evidence that certain of the women were not subjectively offended by the pervasive hostile environment. This burden of production allows the respondent to identify, by its proofs, who belongs in the affected class and who does not. Once the employer comes forward with its individual defenses, those class members who have been challenged with elimination will then carry the ultimate burden of proving and persuading the trier of fact that they were subjectively affected. For the other individuals who have not been challenged, the presumption turns

into a finding of individual liability. The parties will then move to Phase III, the individual damages phase.

## II. Procedural Questions

We now turn to the procedural questions raised by Mitsubishi's motion for partial summary judgment. These questions require consideration of matters outside the pleadings and are, therefore, properly raised in a motion for summary judgment. Mitsubishi's motion raises four (4) procedural questions: (1) are the individual claims of sexual harassment barred by the statute of limitations; (2) is this action barred by the equitable doctrine of laches; (3) did the EEOC fail to engage in good faith conciliation efforts before the Commissioner filed his charge; and, if so, is this action barred by that failure; and (4) should the independent contractors whose names appear on the list of alleged victims, submitted to the Court under seal by the EEOC, be dismissed because they are not "regular employees" of Mitsubishi? The EEOC's motion for leave to amend its Complaint seeks to add allegations that would remedy any potential statute of limitations problems in its original Complaint.

### A. Undisputed Facts

■ The following facts are undisputed for purposes of Mitsubishi's motion for summary judgment regarding the procedural issues identified above.[17] These facts are relevant to all of the procedural issues discussed below.

This lawsuit began when the EEOC Commissioner filed a charge of discrimination alleging a pattern or practice of sexual harassment against Mitsubishi on April 19, 1994. See Mits. Stmt. of Facts ("Stmt of Facts"), ¶ 36. The Commissioner's charge stated:

Specifically, the unlawful discriminatory practices include, but are not limited to: Maintaining discriminatory policies and practices and other terms and conditions of

employment which operate to disadvantage females because of their sex, including the failure to provide a working environment free from sexual harassment.

*Id.* at ¶ 37.

After issuance of the Commissioner's charge, the EEOC started its investigation of "pattern or practice" claims. *Id.* at ¶ 40. On August 9, 1995, the EEOC issued a Determination finding probable cause for the Commissioner's charge. The Determination stated:

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that Respondent has violated Title VII, by discriminating against a class of female employees on the basis of sexual harassment and sex-based harassment. Further, I have determined that reasonable cause exists to believe that Respondent retaliated against and constructively discharged a class of female employees in violation of Title VII.

*Id.* at ¶¶ 43–44. In this Determination, the EEOC also asked Mitsubishi to submit a proposed conciliation agreement within fourteen (14) days and stated that in the absence of a timely response, "we may conclude that further conciliation efforts would be futile or nonproductive." *Id.* at ¶ 44. In a letter dated August 17, 1995, during conciliation negotiations, the EEOC asked Mitsubishi to accept the EEOC's "concept of relief" (*e.g.*, policies and practices, training, affected class relief, reporting and monitoring), without worrying about "the actual amount of monetary relief due affected class members." *Id.* at ¶¶ 48–49. On September 1, 1995, Mitsubishi replied to the EEOC's August 17, 1995 letter. *Id.* at ¶ 50. Mitsubishi's September 1, 1995 letter, stated, in relevant part:

*Affected Class Relief*

From the date the Company began operations through this date, the Company has employed in excess of 1,200 women. Of all of these, 28 filed claims that resulted in a

---

**17.** Because the EEOC has failed to follow the local rule regarding the format necessary to file a response to a statement of undisputed facts, *see* Local Rule 7.1, EEOC's response shall be disregarded. *See Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994) (Seventh

Circuit has repeatedly upheld the strict enforcement of local rules); *Monroe v. Children's Home Ass'n of Illinois*, 128 F.3d 591, 594 (7th Cir. 1997) (upholding this court's strict enforcement of local rule 7.1).

lawsuit now before the Federal Court. We understand the desire of the EEOC to determine an affected class of our employees, but virtually all female past and present employees have been subjected to the plaintiffs' extensive public media campaign, direct personal, mailing and telephone solicitations. It is the Company's position that further solicitation of claimants is unwarranted and that these 28 plaintiffs, alone, after all of their solicitation efforts are the only ones who chose to file a lawsuit. It is, furthermore, the Company's position that the pending lawsuit addresses the issue of relief for persons who claim to be affected by the allegedly unlawful acts. Any further effort by the EEOC to pursue a remedy for these specific claimants would be duplicative and inappropriate. In short, there is no need for an affected class relief provision in any proposed conciliation agreement.

Mits.Ex. 26 at 3–4. The September 1, 1995, letter went on to state:

[T]he Company has acted responsibly in dealing with this issue. Unless the Commission can affirmatively and specifically demonstrate that one or more of the Company's policies, practices and procedures somehow are erroneous, the Company is unwilling to modify them solely for the sake of change.

With respect to the issue of relief for persons who claim to have been adversely affected, the pending lawsuit is sufficient to resolve their claims. It does not appear that further solicitation of claims would be appropriate. In fact, it could adversely impact the claims of the current plaintiffs.

*Id.* at 5.

On September 14, 1995, the EEOC sent a letter to Mitsubishi ending conciliation, noting that "further" conciliation efforts would be "futile or non-productive." *Id.* at ¶ 51. The EEOC filed its Complaint in this case on April 9, 1996. *Id.* at ¶ 52. The EEOC produced a list of 289 alleged victims to counsel for Mitsubishi on April 11, 1997. *Id.* at ¶ 54. The EEOC has included among the 289 alleged victims all women who have received right to sue letters from the EEOC and/or who have been plaintiffs in other actions filed in federal court. *Id.* at ¶ 56. The EEOC has also included among its alleged victims, six

women who are or were contract employees of Mitsubishi, and twenty-five women whose employment with Mitsubishi ended prior to June 23, 1993. *Id.* at ¶¶ 57–58.

### B. Four Questions

#### 1. Statute of Limitations

Mitsubishi's first procedural challenge involves a timeliness question. Mitsubishi seeks to bar certain individuals from obtaining individual relief by arguing that a 300-day statute of limitations applies to cut off all individual claims that were not filed with the EEOC 300 days before the Commissioner's charge was filed. Mitsubishi's argument is that the Commissioner's charge is controlling for purposes of determining the timeliness of the discrimination claims of the vast majority of class members who did not file their own charges with EEOC or IDHR. Mitsubishi also argues that employees who left the company more than 300 days before the Commissioner filed his charge and employees who did not complain to the company about harassment within this 300-day window are also time-barred. Finally, Mitsubishi claims that the complaints of harassment it did receive and did address prior to the 300-day window are not actionable.

The EEOC counters with three arguments: (1) it has authority to seek relief for aggrieved individuals irrespective of the 300-day limitations period; (2) it can proceed with claims beyond the 300-day period because Mitsubishi's conduct constitutes a continuing violation; and (3) even if a 300-day limitations applies and there is no continuing violation exception in this case, the three individual charges timely filed with the EEOC would extend the limitations period to 300 days prior to the date that the first individual claimant filed her charge.

The parties have complicated an already complicated timeliness question by failing to acknowledge one simple fact: this is a § 707 pattern or practice case, as well as a § 706 case. Although § 707(e) indicates that a § 707 action is subject to the procedural requirements of § 706, there is no statutory language, no regulation, no case, and no commentator which definitively holds that there

is any limitations period applicable to a § 707 *pattern or practice* case initiated by the filing of a Commissioner's charge. In fact, the very nature of a pattern or practice case attacking systemic discrimination by a company seems to preclude the application of a limitations period. Because this Court finds, for the reasons set forth below, that a § 707 pattern or practice case is not subject to a limitations period, all individual claims that seek relief based on this pattern or practice will be allowed into the individual relief phase. The fact that some claims might otherwise be time-barred under § 706, which does expressly contain its own limitations period, both for individual and Commissioner charges, is irrelevant.

### (a) The § 707 Pattern or Practice Case

There are two principle distinctions between a § 706 case and a § 707 case. The first distinction is that a § 706 case is based on one or more individual charges or complaints of unlawful discrimination by an employer, and a § 707 case is based on a pattern or practice of systemic discrimination by an employer. Although both a § 706 case and a § 707 case can be filed by the EEOC in its own name and initiated by a "Commissioner's charge," [18] rather than an individual charge, the converse is not true. A § 707 case cannot be initiated by an individual charge, and it cannot be filed as a civil suit by an individual. *See generally General Tel.,* 446 U.S. at 327 (§ 707 pattern or practice cases not designed to advance personal interest of any particular aggrieved person). A § 707 case is a "pattern or practice" case that challenges systemic, wide-spread dis-

crimination by an employer. Conversely, a § 706 case seeks to vindicate, sometimes on a class-wide basis, the rights of aggrieved individuals who are challenging an unlawful employment practice by an employer. The distinction is subtle and not immediately apparent from the language of Title VII, but it is, nonetheless, an important distinction.

The second distinction between the two sections is that § 706 contains its own statute of limitations,[19] whereas, § 707 does not. Although § 707(e) indicates that all actions brought under § 707 are subject to the procedural requirements of § 706, the application of a limitations period in a § 707 action does not make intuitive or legal sense. The statute and the regulations (promulgated by the EEOC) do not help clarify this very important issue. The U.S. Supreme Court acknowledged as much in *EEOC v. Shell Oil Co.,* 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984):

> Section 707(e) of the statute, 42 U.S.C. § 2000e–6(e), which authorizes the EEOC "to investigate and act on a charge of a pattern or practice of discrimination," provides that "[a]ll such actions shall be conducted in accordance with the procedures set forth in [section 706, 42 U.S.C. § ] 2000e–5." As indicated in the text, § 706 expressly delegates to the EEOC responsibility to determine the form and content of charges of discrimination. The statutory scheme ... empowers the Commission to promulgate regulations that differentiate between charges alleging individual instances of discrimination and charges al-

---

**18.** In *EEOC v. Shell Oil Co.,* 466 U.S. 54, 104 S.Ct. 1621, 80 L.Ed.2d 41 (1984), the U.S. Supreme Court stated:

> A Commissioner may file a charge in either of two situations. First, when a victim of discrimination is reluctant to file a charge ... because of fear of retaliation, a Commissioner may file a charge on behalf of the victim. [42 U.S.C. § 2000e–5.] Second, when a Commissioner has reason to think that an employer has engaged in a "pattern or practice" of discriminatory conduct, he may file a charge on his own initiative. § 2000e–6.

*Id.* 466 U.S. at 62. The Supreme Court's statements recognize the difference between a § 706 and a § 707 case, by indicating that a Commissioner's charge under § 706 is filed on behalf of an individual, whereas a Commissioner's charge

under § 707 is filed on "his own initiative" for the purpose of alleging a pattern or practice of discrimination rather than individual discrimination.

**19.** Section 706(e)(1) provides that a charge shall be filed within 180 days of the alleged unlawful employment practice, except in cases where the aggrieved individual has instituted proceedings with a State or local agency with authority to grant relief for such practices (an "FEP" agency). *See also* 29 C.F.R. § 1601.13 (1997). In Illinois, a Title VII charge under § 706(b) must be filed by an individual and/or the EEOC on the individual's behalf, within 300 days from the date of the unlawful practice or 30 days after the state agency notifies the aggrieved party that it is terminating its own proceedings under state law. 42 U.S.C. § 2000e–5(e).

leging patterns or practices of discrimination. The Commission has not exercised that authority. Instead, it has adopted a single regulation, 29 C.F.R. § 1601.12, applicable to both kinds of charges. The result is considerable awkwardness when complainants try to fit allegations of systemic discrimination into a mold designed primarily for individual claims. Under these circumstances, we can and must try to construe § 1601.12, as applied to systemic charges, in a manner consistent both with the plain language of the rule and with the structure and purposes of Title VII as a whole. But our task would be made significantly easier if the Commission saw fit to adopt special regulations more closely tailored to the characteristics of "pattern-or-practice" cases.

466 U.S. at 67 n. 19.

■■■ The Court in *Shell Oil* did not address the limitations question before us, but we face the same dilemma that it did: neither the statute nor the regulations adequately address the differences between an individual (albeit a "class" action) and a pattern or practice action. This is especially true regarding the limitations question. Like the Supreme Court, we believe that there must be an articulation of the relevant differences between the two cases which adheres to the "structure and purposes of Title VII as a whole." After careful consideration, this Court has concluded that the limitations period applicable to § 706 actions does not apply to § 707 cases, despite the language of § 707(e), which mandates adherence to the other procedural requirements of § 706. *See generally E.E.O.C. v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 968 (7th Cir.1996) (§ 707 suits may be brought by EEOC on its own initiative "without certain of the prerequisites to a civil action under [ § 706]") (citing *General Tel.*, 446 U.S. at 327).

This is why. "[I]t is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired." *Shell Oil*, 466 U.S. at 69. Interpretation of the regulations and the case law must advance that statutory goal. At the time a Commissioner's charge alleging a pattern or practice of discrimination is filed and an investigation of the allegations by the EEOC begins, "the Commissioner rarely can identify *any single*

*instance of discrimination* until the Commission has gained access to the employer's personnel records. Thus, a requirement that the Commissioner in [the] charge identify the persons injured, when and how, would cut short most of these investigations. That result would be manifestly inconsistent with Congress' intent." *Id.* at 71 (emphasis added). Without any single incident of discrimination from which to start the 300–day clock running, a court cannot determine whether a Commissioner's charge is "timely filed," as it must do under § 706. *See Walner,* 91 F.3d at 968 (enforcement provisions of § 706 "predicated upon a timely charge"). To simply count back 300 days from the date when a Commissioner's charge is filed for purposes of determining which individuals can obtain individual relief is arbitrary, since the purpose of the limitations period is to prevent the filing of stale claims. This purpose contemplates that the 300–day period, whether one counts forward or backward, is designed to determine whether a charge is "timely filed." A Commissioner's charge alleging a pattern or practice, however, involves a continuing violation that occurs over time. The particular date on which such a charge is filed is, therefore, not amenable to a timeliness determination. Similarly, to impose a 300–day limitations period on the Commissioner's charge would be inconsistent with the very nature of a pattern or practice violation. This is, however, what Mitsubishi wants us to do. We decline this invitation.

There is some support in the case law for the proposition that the limitations period of § 706 does not apply in a pattern or practice case brought under § 707. *See Walner,* 91 F.3d at 968. *See also E.E.O.C. v. Continental Oil Co.,* 393 F.Supp. 167, 170 (D.C.Colo. 1975) (the 180–day provision of § 2000e–5(e) is for the protection of individuals and was not intended to limit the time within which the Commission may bring a pattern or practice suit under this section); *U.S. v. Fresno Unified School Dist.,* 592 F.2d 1088, 1096 (9th Cir.1979) (because it takes more than one unlawful practice to constitute a pattern or practice of employment discrimination, there can be no certain date from which the statutory period for filing an employment discrimination charge runs and, therefore, it

is questionable whether the statutory filing period applies to a suit based on a pattern or practice of discrimination). Finally, at least one commentator has indicated that he does not believe that § 707 suits need to comply with the timeliness requirements of § 706. *See* 4 Lex K. Larson & Arthur Larson, Employment Discrimination § 75.02[2] (2d ed.1997) (more than one unlawful act needed to constitute a pattern or practice of employment discrimination and other parts of § 706 establishing certain time limitations have questionable application to pattern or practice litigation).

There is also authority from the Seventh Circuit indicating that a pattern or practice of sexual harassment case is, by its very nature, a continuing violation. *See Dasgupta v. Univ. of Wisconsin Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997) (clearest example of continuing violation is sexual harassment where character of violation reveals itself over time and cannot be made subject of lawsuit when it first occurs). However, the continuing violation theory, traditionally an exception to a statutory bar, does not support the application of a limitations period to § 707 actions either, because it does not make sense in a pattern or practice case. Under § 706, a court can count back 300 days from the filing of a timely individual charge (or Commissioner's charge based on individual incidences of discrimination) to determine the relevant time period for determining which claims come in to the case and which are barred. If there is a continuing violation asserted, as there is in this case, a § 706 action permits the court to determine whether the individuals claiming the exception are entitled to it by matching the allegations of the individual charge, which is time-barred, with the conduct alleged in the timely charge. *See Walner,* 91 F.3d at 969 (*citing Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir.1992)). If those allegations can be linked up, then the continuing violation exception applies to allow particular individuals into the lawsuit.

Under § 707, however, such an analysis is impossible. By its nature, the Commissioner's charge alleging a pattern or practice of sexual harassment is not filed within 300 days of any particular incident of sexual harassment, because it is not based on an individual charge, but rather on the evidence gathered over a course of time showing a pattern of harassment against many individuals. *See generally Walner,* 91 F.3d at 969 (suggesting that a § 707 pattern or practice case does not require a valid charge filed in a "timely" manner). As a result, there is no way for a court to determine if the Commissioner's charge is "timely." The date picked for the filing of a Commissioner's charge is, most likely, when the Commissioner has some reason to suspect a pattern or practice of systemic discrimination by an employer.[20] Presumably, the pattern or practice of discrimination, itself, as alleged, has continued over a period of time and most likely for more than 300 days prior to the filing of the Commissioner's charge.

Another problem for a court trying to apply a limitations period to a § 707 claim is determining which individuals are entitled to be a part of the case. Certainly, all the victims of the alleged pattern or practice should be entitled to relief; but how does a court determine who these individuals are? Unlike a § 706 case; where there is an individual, timely filed charge to set the boundaries and mark out the period of discrimination being litigated, in a § 707 case there is only the Commissioner's charge, filed at a single point in time, but alleging discrimination which has a durational and "continuing" aspect that precedes any particular "limitations period." Moreover, in a § 707 case, the Commissioner's charge can allege a variety of discriminatory conduct experienced by a wide-range of individuals, based on its investigation; the Commissioner is not limited to the conduct which an individual charge alleges, as is the case in a § 706 action. Given that the conduct alleged by time-barred claims must be linked to the conduct alleged

---

**20.** We know, however, from the *Shell Oil* case, that the Commissioner need not know of particular, individual incidences of discrimination at the time a charge is filed. It is the investigation, which will support a reasonable cause determination, that will uncover the factual basis, if any, for the suspicions that led to the Commissioner's charge and the EEOC's subsequent investigation. *See generally* 466 U.S. at 70–72.

in the timely claim, application of a continuing violation exception would be unmanageable, even if a limitations period established a date certain, because a wide-range of conduct constitutes the marker for purposes of deciding which time-barred individuals can claim a stake in the pattern or practice case.

To summarize: In a § 706 case, the court would simply look at the conduct alleged in the charge and by the time-barred individuals to determine whether the necessary nexus was present. However, where pattern or practice allegations are the sum and substance of the Commissioner's charge, the potential scope of the conduct to which individuals can claim a link is far reaching, to say the least. In fact, the scope of alleged but unproven pattern or practice allegations is so large that any line drawn at this stage of the litigation would be arbitrary.

The only conceivable rationale for setting a limitations period on § 707 claims is that the absence of a limitations period may allow stale claims to proceed. For example, although this case involves evidence dating back to 1988 or 1989, other pattern or practice cases may involve companies with longer histories. To set a precedent that there is no statute of limitations for § 707 cases might place an impossible burden on defendants in other cases to preserve stale evidence.

■ The Court believes that the solution to this problem is to let the evidence of a pattern or practice determine the relevant "limits" for the lawsuit. Once the EEOC establishes that a pattern or practice exists, in Phase I, this evidence will determine when the provable pattern or practice began. Any individual claims that fall within that period will be allowed to proceed to the individual relief stage. This method will honor the "continuing violation" nature of a pattern or practice case, without applying the exception as it is traditionally conceived.

■ A pattern or practice action seeks to eradicate a continuing violation. In this case, the EEOC alleges the pattern or practice of discrimination by Mitsubishi occurred over time through repeated tolerance of individual acts of sexual harassment within the Normal, Illinois plant. The "durational" aspect of this violation means that it is of a "continuing" nature. *See generally Shell Oil,* 466 U.S. at

71 (when a § 707 charge is filed, the Commissioner, "based upon statistical manifestations of the net effects of the employer's practices," has reason to "believe that the employer has violated Title VII *on a continuing basis.*"). "A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. Univ. of Wis. Bd. of Regents,* 121 F.3d 1138, 1139 (7th Cir.1997) (citations omitted). "The clearest examples involve sexual harassment, where ... duration is often necessary to convert what is merely offensive behavior, and therefore not actionable under Title VII, ... into an actionable alteration in the plaintiff's working conditions." *Id.* Moreover,

> [W]here as here, a plaintiff attacks a rule or policy that continued to exist right up into the limitations period, concerns about prejudice to the defendant are absent or diminished ... the continued nature of the policy represents its affirmative perpetuation ... and is susceptible to characterization as a conscious waiver of limitations period protection.... "Simply put, an employer that maintains a continuing violation neither deserves nor obtains repose."

*U.S. E.E.O.C. v. City of Chicago,* 1989 WL 134788, * 9 (N.D.Ill.1989) (*quoting E.E.O.C. v. Home Ins. Co.,* 553 F.Supp. 704, 712 (S.D.N.Y.1982)).

The EEOC's allegations of a pattern or practice are therefore sufficient—at this stage of the litigation—to save the individual claims from a statute of limitations bar. Once the evidence establishes either the existence or the nonexistence of a pattern or practice, the trier of fact will be able to determine when the pattern or practice actually began and, therefore, who the individuals who were victims of such a pattern or practice actually are for purposes of a statutory bar:

■ That said, we do not believe that any plaintiff who has received a right to sue letter from the EEOC and initiated civil proceedings in federal court based on that right to sue may obtain individual relief in this

case. These plaintiffs, therefore, will not be permitted to participate in an individual relief phase, should the parties reach such a phase. They will, however, be able to proceed as part of the pattern or practice case, offering anecdotal evidence. With that condition in mind, the Court denies Mitsubishi's motion for summary judgment on the statute of limitations question presented under § 707.

### (b) The § 706 Case

If the pattern or practice case is allowed to proceed, as this Court has determined it should, and this Court's analysis of the § 707 limitations issue is correct, then any statutory bar to the § 706 claims is irrelevant, since these claims will come in under § 707. However, in the event that we have erred, a § 706 analysis is in order.

The Commissioner's § 706 case is based, for purposes of the statute of limitations question, on three individual charges of discrimination: (1) the Terry Paz charge filed on November 13, 1992, alleging a pattern or practice of hostile environment sexual harassment; (2) the Brenda Schillaci charge, filed on July 19, 1993, alleging the same; and (3) the Lena Rector charge, filed on November 16, 1993, alleging the same.[21] According to the EEOC, these three charges would extend the 300–day limitations period to January 18, 1992; September 22, 1992; and January 20, 1993, respectively. In other words, for purposes of the § 706 cases, no individual claims that predate January 18, 1992, would be entitled to relief. The parties appear to agree that a January 18, 1992, time bar would eliminate fifteen women. *See* Mits. Ex. NN to Aff. of Paul Betts. *See also* EEOC Resp. at 47, n. 39. However, there is no need to eliminate these women from the proceedings now, since this Court's pattern or practice rulings keep them in the lawsuit. Unless these rulings are reversed, all 289 plaintiffs remain in this lawsuit for purposes of the pattern or practice case, and all but the plaintiffs who have already filed individual claims in federal court in another case, will proceed to the individual relief stage, if the pattern or practice case is successful.

---

**21.** The 30 additional charges alleging sexual harassment by Mitsubishi, filed with the EEOC

### 2. Laches

■ Mitsubishi's second procedural challenge is based on the equitable doctrine of laches. Mitsubishi argues that laches bars the EEOC's action on behalf of some or all of the claimants based on the following facts: (1) the Paz charge was not investigated for 19 months; (2) the Commissioner's charge was based on fewer than a dozen interviews; (3) the Commissioner's charge did not provide Mitsubishi with notice regarding specific incidents of sexual harassment; (4) the EEOC never informed Mitsubishi of any incident of alleged harassment based on the 91 interviews taken after the Commissioner filed his charge; (5) the EEOC's Determination Letter offered no factual support for its findings and did not provide Mitsubishi with notice regarding specific complaints; and (6) the EEOC's Complaint was filed 3 1/2 years after the Paz charge. Based on these facts, Mitsubishi argues that it has been "severely prejudiced" because it has been precluded from taking remedial action at the earliest possible date and its damage exposure has been increased as a result.

These arguments are meritless. First, there is some basis for questioning whether the laches defense is even available as a complete bar to an action filed by the EEOC to enforce Title VII. *See E.E.O.C. v. Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3rd Cir.1984) (because the EEOC is a government agency, application of laches defense is problematical). Without deciding that particular question, this Court finds that even if the laches defense is available, the standards governing application of the defense have not been met here.

In *Great A & P*, the Third Circuit summarized the controlling principles of law to apply in considering a laches defense against the EEOC in a Title VII case:

> [A]ssum[ing,] arguendo, without deciding, that laches may in some cases bar an EEOC action rather than simply counsel a modification of the remedy[,] ... [t]he elements of the equitable defense of laches are (1) lack of diligence by the party against whom the defense is asserted, and

---

after the Paz' charge on November 13, 1992, are not at issue. *See* Mits.Mem. at 3.

(2) prejudice to the party asserting the defense. These elements are conjunctive, and since laches is a defense, the burden of establishing both is on the defendant. If a statutory limitations period that would bar legal relief has expired, then the defendant in an action for equitable relief enjoys the benefit of a presumption of inexcusable delay and prejudice. In that case, the burden shifts to the plaintiff to justify its delay and negate prejudice. **No statute of limitations applies to an EEOC Title VII action.** Thus, the burden remains on [the defendant] to establish both elements of the defense. On summary judgment, the movant's affidavits must establish a *prima facie* defense of laches.

*Id.* at 80–81 (*citing Occidental Life Ins. Co. v. E.E.O.C.,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977)).

■ In *Occidental Life,* the Supreme Court discussed the importance of preserving the EEOC's enforcement powers and held that there is no limitations period that governs the time between when an individual charge is filed under § 706 with the EEOC and the time when (and if) the EEOC brings an enforcement action on behalf of that individual. *See* 432 U.S. at 361. The 180–day statutory period controls only when the individual seeks to bring his or her claim individually, and the EEOC has issued a right to sue notice. Thus, "[t]he 180 day limitation provides only that [a] private right of action does not arise until 180 days after a charge has been filed." *Id.* It does not limit enforcement action by the EEOC if the individual wishes to "leave the ultimate resolution of [the] charge to the efforts of the EEOC." *Id.*

Mitsubishi argues that an "inexcusable delay" occurred between the time when Terry Paz filed her charge of discrimination on November 13, 1992, and the filing of this lawsuit on April 9, 1996. We disagree. In an EEOC Title VII action, especially a pattern or practice action, a court must take into account that the EEOC is seeking to vindicate both the "public interest in eliminating employment discrimination and the private interests of those class members it represents." *See Great A & P,* 735 F.2d at 81. Investigation and conciliation of pattern or practice charges takes time. After a charge

is filed and notice of the charge is given the employer, the EEOC must investigate the claim and issue a reasonable cause determination if warranted. The EEOC must then enter into conciliation efforts with the employer. Title VII "imposes no maximum time limitation on these three steps in the administrative process: (1) the filing of a charge; (2) the determination of reasonable cause; and (3) the filing of a complaint." Id. at 73. And "it is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired." *Shell Oil,* 466 U.S. at 69.

■ Application of the laches defense in a case such as this would certainly undermine and impair the EEOC's statutory duty to investigate and extirpate any pattern or practice of discrimination at Mitsubishi's Normal, Illinois, plant. There are several simple reasons for this conclusion. First, Mitsubishi was notified, within ten (10) days, of each individual charge filed with the EEOC and of the Commissioner's charge. Title VII required such notification, and Mitsubishi has not provided any evidence that it did not receive notice of these charges. "Neither an individual charge nor a Commissioner's charge need be supported by reasonable cause at the time of its filing." *Great A & P,* 735 F.2d at 72 (*citing Shell Oil,* 466 U.S. at 75–76). Thus, it is irrelevant that the Paz charge was not investigated for nineteen (19) months and that the Commissioner's charge was based on fewer than a dozen interviews. Second, Mitsubishi had a duty to preserve its records regarding the individual charges of discrimination filed by its employees with the EEOC. *See* 29 C.F.R. § 1602.14 (1997). The company's failure to comply with the record-preservation requirements would not qualify as establishing prejudice. *Id. See also Great A & P,* 735 F.2d at 72 ("[a]n employer notified of a charge is obliged by regulation to preserve relevant personnel records until the charge's final disposition."). The fact that some individual complaints of discrimination may never have been made to Mitsubishi's own employee relations department is irrelevant. The EEOC charge, served on Mitsubishi, was enough to trigger the record preservation duties. Similarly, the fact that many of Mitsubishi's so-

called "witnesses" no longer work for the company does not establish their unavailability and does not establish prejudice. Mitsubishi's .argument that it did not have "notice" of the individual claims is, therefore, unavailing. Dim memories and missing witnesses are no defense. Mitsubishi had a duty, when the individual charges were filed, to preserve its records for its own defense.

▇▇▇ Mitsubishi's biggest complaint is that the EEOC failed to provide Mitsubishi with specific information regarding the individual incidences of harassment which form the basis for its pattern or practice case. In particular, Mitsubishi claims that: the Commissioner's charge did not put Mitsubishi on notice as to any particular incident of sexual or sex-based harassment; the EEOC did not share the results of its investigation with Mitsubishi; and the Determination Letter offered no factual support for its findings. As the Supreme Court in *Shell Oil* pointed out, however, "the Commissioner can rarely identify any single instance of discrimination until the Commission has gained access to the employer's personnel records." *See Shell Oil*, 466 U.S. at 71. In fact, Congress eliminated the Commissioner's duty to have "reasonable cause" at the time a charge was filed. *Id.* at 76. "The only plausible explanation for that change is that Congress wished to place a Commissioner on the same footing as an aggrieved private party: neither was held to any prescribed level of objectively verifiable suspicion at the outset of the enforcement procedure. Rather, the determination whether there was any basis to their allegations of discrimination was to be postponed until after the Commission had completed its inquiries." *Id.* at 76–77. Moreover, "a requirement that the Commissioner in his charge identify the persons injured, when and how [would] radically limit the ability of the EEOC to investigate allegations of patterns and practices of discrimination [and be] manifestly inconsistent with Congress' intent." *Id.* at 70–71. The "net effect" of such a requirement "would be to hamper significantly the Commission's ability

to investigate expeditiously claims of systemic discrimination." *Id.* at 72. Thus, the EEOC cannot be faulted for "failing" to provide Mitsubishi with specific information before its investigation was complete.[22]

▇▇▇ Finally, Mitsubishi cannot credibly claim that the time the EEOC took to conciliate this case should be included as part of the inexcusable delay. "The express policy of Title VII favors voluntary compliance not only before, but even after an EEOC suit is filed." *Great A & P*, 735 F.2d at 84. "It would be inconsistent with that policy to attribute to the EEOC delays which ... were attributable to ..." the EEOC's efforts to comply with that policy, especially when Mitsubishi helped contribute to those delays. *Id.*

For the foregoing reasons, this Court finds that Mitsubishi has failed to establish the two elements of the laches defense, inexcusable delay and prejudice. The laches defense, therefore, fails, and Mitsubishi's motion for partial summary judgment is denied on this issue.

### 3. *Duty to Conciliate*

▇▇▇ Mitsubishi argues that this case should be stayed for further conciliation because the EEOC did not adequately comply with its statutory obligations to conciliate the Commissioner's charge in good faith before this lawsuit was filed. Mitsubishi, therefore, is not arguing that the EEOC failed to attempt conciliation; it is arguing that the conciliation was not conducted in good faith.

▇▇▇ Section 706(b) of Title VII requires the EEOC, before instituting a lawsuit, to "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e–5(b). Only if the Commission has been unable to secure from the respondent an acceptable conciliation agreement may the EEOC bring a civil action. 42 U.S.C. § 2000e–5(f)(1). *See also*

---

**22.** Mitsubishi also argues that it was prejudiced by the EEOC's failure to identify the 289 women claiming individual relief in its Determination Letter. Mitsubishi has not provided this Court with any authority to support the imposition of

such an obligation upon the EEOC. Without such authority, this Court believes the prejudice to Mitsubishi, if any, is minimal and does not support a finding of laches in this case.

*E.E.O.C. v. Continental Oil Co.*, 548 F.2d 884, 889 (10th Cir.1977) (only where conciliation is attempted and the efforts fail may the Commission enter into litigation to vindicate individual instances of discrimination in employment). Good faith conciliation is a jurisdictional prerequisite to a § 706 suit by the EEOC. *See E.E.O.C. v. Sears, Roebuck and Co.*, 490 F.Supp. 1245, 1256 (D.C.Ala.1980) (attempt to conciliate claim sued upon was a condition precedent to action brought by Commission challenging alleged pattern or practice of hiring discrimination against blacks). The same requirements apply to a § 707 suit. *See id.*

The good faith requirement appears to be an easy burden to satisfy. A review of the relevant statutory language on conciliation reveals that substantial discretion is vested in the Commission. The Commission shall continue conciliation until such time as it is "unable to secure from the respondent a conciliation agreement acceptable to the Commission...." 42 U.S.C. § 2000e–5(f)(1). An effort by the Senate in 1972 to require judicial review of the Commission's determination of "acceptable" agreements was soundly rejected. *See* 118 Cong.Rec. 3807 (Feb. 14, 1972). Such an examination of the conciliation process was deemed unworkable. *Id. See also E.E.O.C. v. Zia Co.*, 582 F.2d 527, 533 (10th Cir.1978) (although good faith efforts required, court should not examine details of offers and counteroffers between parties, nor impose its notions of what an agreement should provide); *E.E.O.C. v. Sears, Roebuck & Co.*, 504 F.Supp. 241, 262 (N.D.Ill.1980) (same).

The record in this case reveals that the EEOC sent Mitsubishi a Determination Letter dated August 9, 1995, outlining its basis for finding reasonable cause to proceed with a pattern or practice suit against its company. In this letter, the EEOC outlined the Title VII violations found to exist at the Normal, Illinois, plant and it invited Mitsubishi to conciliate the Commissioner's charge by requesting that Mitsubishi provide the EEOC with a list of its conciliation terms within fourteen (14) days. The Determina-

tion Letter also described the types of relief that the EEOC seeks for Title VII violations. *See* Mits.Ex. 19. Mitsubishi's response, dated August 16, 1995, requested that the EEOC provide it with a list of demands for conciliation. Mits.Ex. 23. Undaunted by this "cat-and-mouse" game, the EEOC responded with a letter setting out the provisions that would be central to an "acceptable conciliation agreement." Mits.Ex. 24. This letter, as the EEOC argues, was sufficient to satisfy its conciliation obligations and to inform Defendant of the remedies it sought for the pattern or practice violations outlined in its Determination Letter. Mitsubishi, however, responded with a letter dated September 1, 1995, which any reasonable person would read to mean that the conciliation provisions offered by the EEOC were not acceptable to Mitsubishi and that further efforts to negotiate on these terms would be futile. *See* Mits.Ex. 26. As the EEOC puts it, each settlement term proposed by the EEOC was declared unnecessary by Mitsubishi. Using unambiguous language, Mitsubishi stated that it was not willing to change any of its policies, practices or procedures unless EEOC demonstrated to its satisfaction that such change was necessary.

Based on this record, the Court finds that the EEOC's conciliation efforts, as of September 1, 1995, were satisfied in good faith and that further conciliation efforts, based on the terms that the Commission found acceptable, were futile at that time.[23] The statutory requirements for filing suit were therefore met. Mitsubishi's request for a stay, based on the argument that good faith conciliation never occurred, is therefore denied. To the extent that Mitsubishi seeks dismissal of this action on jurisdictional grounds, that motion is denied too.

#### 4. Independent Contractors

 Mitsubishi's final procedural challenge is to the six individuals who worked at Mitsubishi under contract and who have been identified as potential victims of the alleged pattern or practice of sexual

---

**23.** We note that further conciliation efforts may be more fruitful now, just as settlement, mediation, and arbitration may appear more attractive to Mitsubishi given the developments in this litigation. Alternatives of this kind are open, and this Court urges the parties to pursue them. The Court will not, however, order a stay of proceedings for this purpose.

harassment. Mitsubishi claims that these six women have never been employed by its company and are not "employees" for purposes of Title VII who are able to claim relief under the statute. The EEOC claims that these six women were "jointly employed" by Mitsubishi and their contract employer and are entitled to proceed in this case. Alternatively, the EEOC argues that the determination of whether these six individuals were employed by Mitsubishi involves an issue of "control" which requires factual discovery that is not yet complete. Accordingly, the EEOC claims that it is too early to decide this issue on summary judgment. Mitsubishi replies that the "joint employer" theory has not been alleged in the Complaint and is, therefore, not a part of this case.

Mitsubishi's arguments are, once again, unavailing. The "notice pleading" rule is well-established in federal court. Under Rule 8, the plaintiff is only required to provide the defendant with "a short and plain statement of the claim showing that the pleader is entitled to relief." The plaintiff is not required to plead its theory or theories of the case. The EEOC has alleged that Mitsubishi employees were subject to the company's unlawful pattern or practice of sexual harassment under Title VII. The determination of whether the six identified individuals were Mitsubishi employees under a "joint employer" theory is, as the EEOC correctly points out, a factual issue that cannot be decided without more discovery. The allegations of the original and the amended complaints are sufficient to bring the joint employer theory into play. We, therefore, deny Mitsubishi's motion for partial summary judgment on this issue at this time.

### C. Motion for Leave to Amend

The Federal Rules of Civil Procedure expressly provide that leave to amend a complaint "shall be freely given when justice so requires." Rule 15(a). The parties acknowledge that leave to amend should be freely granted, except where the opposing party can show undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *See Foman v. Davis,* 371

U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Mitsubishi, however, claims that the EEOC's amendment comes too late in the litigation and should be denied as a blatant attempt to cure the very deficiencies that Mitsubishi has pointed out in its motion for partial summary judgment. The EEOC responds that its attempt to cure these deficiencies by amendment, even at this stage of the litigation, is entirely proper. This Court agrees with the EEOC.

The EEOC's amendment, offered to support its factual basis for the allegations made in the original Complaint regarding the relevant time periods when a pattern or practice of sexual harassment occurred at the Mitsubishi plant, is not unduly prejudicial, nor can it come as a great surprise to Defendants. As for the delay, given the fact that the lawsuit is still at a relatively early stage, this Court does not believe that the delay is undue or prejudicial to Mitsubishi. Further, the Court does not find any of the other exceptions noted by *Foman* present in this case. At most, the amendment, which refers to "additional" charges of sexual harassment filed by three individuals, simply extends the dates from which a 300–day statute of limitations, if it applied in this case, would run. If we were dealing with a § 706 case, the amendment would be relevant. However, since this Court has found that there is no statute of limitations or 300–day period applicable to the Commissioner's charge under § 707, the fact that this is a § 707 case, as well as a § 706 case, means that the addition of the three new charges in the amendment is irrelevant to the limitations issue. At most, the amendment simply adds more support to the EEOC's allegations that numerous individuals were the subject of sexual harassment at the Mitsubishi plant in Normal. The Court believes that "justice" is served by allowing the amendment. The facts alleged in the Amended Complaint support the allegations in the original Complaint, are not prejudicial, and serve the truth finding function of this lawsuit. The motion for leave to amend is, therefore, allowed.

### CONCLUSION

This opinion has resolved the five questions raised by Mitsubishi as follows: (1) a

pattern or practice action can be brought for sexual harassment claims under §§ 706 and 707 of Title VII; (2) there is no applicable statute of limitations in a § 707 case to bar the individuals identified by the EEOC as potential victims of the alleged pattern or practice of sexual harassment; (3) the equitable doctrine of laches does not bar this action because there has not been an inexcusable delay or severe prejudice in this case; (4) the EEOC satisfied its statutory good faith obligations to conciliate this matter prior to filing this lawsuit; and (5) the six individuals who worked at Mitsubishi under contract will not be excluded from this action at this time.

Because the determination of these questions "involves ... controlling question[s] of law as to which there is a substantial ground for difference of opinion[,]" the Court believes that "an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Accordingly, the legal and procedural questions resolved by this Order will be certified to the Seventh Circuit for immediate appeal.

IT IS THEREFORE ORDERED that Mitsubishi's Motion for Partial Summary Judgment (Doc. # 78–1) is **DENIED.** IT IS FURTHER ORDERED that the EEOC's Motion for Leave to File an Amended Complaint (Doc. # 93–1) is **ALLOWED.** IT IS FURTHER ORDERED that the five legal and procedural questions raised by Mitsubishi's Motion for Partial Summary Judgment (identified above) be **CERTIFIED** for immediate interlocutory appeal to the Seventh Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b).[24] The parties have ten (10) days from the date of this Order in which to file such an appeal. In the event that an interlocutory appeal is filed, this case shall be **STAYED** pending its outcome. In the event that the Court's Order is not appealed, a status conference setting new discovery and trial dates will be set, and all parties will receive notice of this conference by mail. Current discovery dates remain in effect until that notice; but the pretrial order due on February 2, 1998, the pretrial conference set on February 16, 1998, and the jury trial date

of March 2, 1998, are hereby canceled. IT IS SO ORDERED.

---

**24.** The Court's ruling on EEOC's Motion for Leave to File an Amended Complaint (Doc. # 93– 1) is not being certified.